STATE OF NORTH CAROLINA v. JOHN LEWIS NEWBORN

No. 718SC73

(Filed 26 May 1971)

1. **Automobiles § 3— driving while license suspended — sufficiency of evidence**

    The State offered sufficient evidence to support a jury finding of defendant's guilt of driving on the public highway while his operator's license was suspended, although defendant himself had testified that he had never had an operator's license. G.S. 20-28(a).

2. **Automobiles § 3— driving while license suspended — erroneous instructions**

    In a prosecution charging defendant with operating a motor vehicle on the public highways while his license was suspended, wherein defendant entered a plea of not guilty and testified that he had never had an operator's license, the trial court erred in failing to instruct the jury that before they could return a verdict of guilty they must find that defendant (1) had operated a motor vehicle (2) on the public highways (3) at a time when his license was in a state of suspension.

APPEAL by defendant from *Cowper, Judge,* August 1970 Criminal Session of Superior Court held in LENOIR County.

In an addendum to the record it was stipulated:

"1. The judgment appearing on page 4 of the Record is the judgment of the District Court.

2. Defendant appealed therefrom to the Superior Court only upon the charges of driving while license revoked and failing to report an accident.

3. In Superior Court, defendant was arraigned and tried solely upon the charge of driving while license revoked. He was not tried on the charge of failing to report an accident."

In superior court defendant pleaded not guilty. The jury's verdict was guilty as charged. From the judgment imposed, the defendant appealed to the Court of Appeals.

*Attorney General Morgan and Assistant Attorney General Costen for the State.*

*Turner & Harrison by Fred W. Harrison for defendant appellant.*

MALLARD, Chief Judge.

The evidence for the State tended to show that on 8 March 1970 at about 10:00 p.m. the defendant backed a 1959 model station wagon onto a highway that "runs into another highway off U. S. 70" and in doing so collided with another automobile. The defendant gave the owner of the other car his "license number" and his "insurance number" but did not give his driver's license number. On direct examination the investigating highway patrolman testified that he secured a warrant and went to the defendant's home but that the defendant "did not present a valid operator's license and he has not presented one to me since that time." On cross-examination the highway patrolman testified:

"In reference to the Notice which I received from the Department, *his license was revoked for the offense of driving under the influence.* The record does not say whether or not he had ever had a license. If he had had a set at the time, it would have been listed. I do not know whether the record would reflect if he had ever been issued a license or not." (Emphasis added.)

A "Drivers License Record Check for Enforcement Agencies" and a letter of "Official Notice and Record of Revocation of Driving Privilege" were introduced into evidence but were lost and not transmitted as a part of this record. However, under date of 10 May 1971, the attorney for the defendant and the Attorney General have filed in this case what they call "Exhibit 1 and Exhibit 2," and they stipulate they may become a part of the record in lieu of the actual exhibits introduced at the trial and that these exhibits "are true and correct facsimiles of the exhibits introduced at trial except that the search date of May 4, 1971 appearing on Exhibit 1 and the Notary Public suscription *(sic)* date of 4 May 1971 appearing on Exhibit 2 are not the dates which appeared upon the original exhibits." The exhibit "Drivers License Record Check for Enforcement Agencies" shows a "revocation" with effective date of suspension "09 21 69"; date eligible for reinstatement "09 21 70"; and reason for revocation "driving under the influence—1st. off."

At the close of the evidence for the State, the defendant's motion for a "directed verdict of not guilty" was denied.

The defendant offered evidence which in substance tended to show that he owned the 1959 station wagon that struck the automobile of the State's witness. At that time Milton Campbell was driving the defendant's automobile. The defendant testified:

"I never drove the car at any time that evening. I did not have a Driver's license and I have never had an Operator's license. I was convicted of driving under the influence. Other than that, I have never been convicted of anything."

On cross-examination, the defendant testified:

"* * * I have never had an Operator's license because every time I get on the road, they stop me and say it has been revoked or something like that; and they have never been revoked but one time and that was September 21, 1969. I have never had a set of Driver's license because they won't let me have one.

Yes sir, I received a copy of the letter which you have there, telling me not to drive. It told me that my license had been revoked; but I have never had any license. * * *"

[1]  At the close of all the evidence, the defendant moved for a "directed verdict" which was denied; and on oral argument,

defendant's counsel concedes that his motions for "directed verdicts" were intended to be motions for judgment of nonsuit. We think that the direct and circumstantial evidence was sufficient to require submission of the case to the jury.

The defendant was charged with a violation of G.S. 20-28(a), the pertinent parts of which read as follows:

> "Any person whose operator's or chauffeur's license has been suspended or revoked * * * as provided in this chapter, who shall drive any motor vehicle upon the highways of the State *while such license is suspended or revoked* shall be guilty of a misdemeanor * * *." (Emphasis added.)

The defendant assigns as error that portion of the charge reading as follows:

> "* * * I have ruled, as a matter of law, that even though one does not have a valid driver's license, that the State might suspend that privilege; and if one drives after the privilege has been suspended that he might be found guilty of this statute.
>
> So I instruct you that if the State has satisfied you from the evidence and beyond a reasonable doubt that the State of North Carolina had revoked the driving privilege of John Lewis Newborn; and if the State has further satisfied you beyond a reasonable doubt that on the night of March 8th, 1970, he operated a motor vehicle on the public highways of this State, it would be your duty to return a verdict of guilty as charged."

Defendant contends that all the evidence in this case tended to show that he had never possessed a driver's license; that upon his conviction in September 1969 of operating a motor vehicle while under the influence of intoxicating liquor, his operator's license could not have been suspended or revoked because he did not have one; that the fact that he was thereafter officially notified that his license had been revoked was of no consequence; that the State could not revoke or suspend a license which he had never had; that even if he was driving an automobile on the highway within the time during which there was a suspension or revocation of his "driving privilege," the most he could have been guilty of was operating a motor vehicle on the public highway without a valid operator's license in violation of G.S. 20-7;

and that the trial judge committed error in failing to instruct the jury that if the defendant had never had a license, they should return a verdict of not guilty.

Defendant also argues in his brief that the court's charge, hereinabove set out, "first of all, contains a misstatement of the law; and it is apparent that the Trial Court adopted the State's interpretation of G.S. 20-23.1."

The State contends that under the provisions of G.S. 20-23.1, the suspension or revocation of the operating privilege of a person is the equivalent of the suspension or revocation of the operator's or chauffeur's license of such person under Chapter 20 of the General Statutes. G.S. 20-23.1 is as follows:

"In any case where the Department would be authorized to suspend or revoke the license of a person but such person does not hold a license, the Department is authorized to suspend or revoke the operating privilege of such a person in like manner as it could suspend or revoke his license if such person held an operator's or chauffeur's license, and the provisions of this chapter governing suspensions, revocations, issuance of a license, and driving after license suspended or revoked, shall apply in the discretion of the Department in the same manner as if the license had been suspended or revoked."

In the case of *In re Revocation of License of Wright,* 228 N.C. 584, 589, 46 S.E. 2d 696, 699 (1948), the Supreme Court said:

"A license to operate a motor vehicle *is a privilege* in the nature of a right of which the licensee may not be deprived save in the manner and under the conditions prescribed by statute." (Emphasis added.)

Under the provisions of G.S. 20-23.1 and G.S. 20-28(a), when a person who does not hold a driver's license has his operating privilege revoked or suspended in the manner and under the conditions prescribed by statute, and while such operating privilege is thus suspended or revoked he drives a motor vehicle upon the highways of this State, he violates the above-quoted portion of G.S. 20-28(a). However, in order to convict a person of a violation of G.S. 20-28(a), such person must have (1) operated a motor vehicle (2) on a public highway (3) while his operator's

Byrd v. Rubber Co.

license or operating privilege was lawfully suspended or revoked. *State v. Cook,* 272 N.C. 728, 158 S.E. 2d 820 (1968).

[2] "A plea of not guilty puts in issue *every essential element of the crime charged." State v. Ramey,* 273 N.C. 325, 160 S.E. 2d 56 (1968). Although the defendant in his testimony seems to have admitted that his operating privilege had been suspended or revoked, he did not judicially admit that it was in a state of suspension or revocation on the date of the offense alleged in the warrant. The defendant had not withdrawn or modified his plea of not guilty. In this final mandate of the charge the jury was not instructed that before they could convict the defendant of the crime charged, they must find beyond a reasonable doubt that the defendant, on the date alleged, was (1) operating a motor vehicle (2) on the public highways and (3) that at the time thereof his operator's license or operating privilege was in a state of revocation or suspension. In failing to do this, there was error. *State v. Cook, supra.*

For the reasons above stated, the defendant's assignment of error to that portion of the charge hereinabove set out is well taken. The defendant is entitled to a new trial.

. New trial.

Judges PARKER and VAUGHN concur.